**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

BRETFORD MANUFACTURING, INC.,     )
                                           )
                Plaintiff,            )       Case No. 98 C 0287
                                           )
        v.                     )       Judge John F. Grady
                                           )
SMITH SYSTEM MANUFACTURING       )
COMPANY,                                )
                                           )
                Defendant.        )
                                           )

**DOCKETED**
**DEC 0 4 2003**

## SMITH SYSTEM'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES



**FILED**
DEC X 2 2003
MICHAEL W DOBBINS
CLERK, U.S. DISTRICT COURT

Thomas J. Wimbiscus
Alejandro Menchaca
Dennis P. Hackett
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 775-8000

Attorneys for Defendant,
SMITH SYSTEM MANUFACTURING
COMPANY

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   SMITH SYSTEM IS ENTITLED TO AN AWARD OF ITS
     ATTORNEYS' FEES ..................................................................................... 2

    A.   The Standard For Award Of Attorneys' Fees To A Prevailing
       Defendant .......................................................................................... 2

    B.   Smith Is The Prevailing Party In This Case ........................................ 3

    C.   This Is An Exceptional Case ............................................................... 3

    1.   Bretford's Suit Lacked Merit From Its Inception ............................... 3

        a.   Bretford's Trade Dress Infringement Claim Was Supported
           By Absolutely No Evidence ........................................................... 4

        b.   Bretford's Reverse Passing Off Claim Was Prosecuted For
           Nearly Four Years Due Only To Bretford's Misleading The
           Court And Misrepresenting The Relevant Case Law .................... 6

        c.   Bretford's Illinois Claims Were Equally Without Merit ............ 11

    2.   Bretford's Prosecution Of This Suit Reflects Elements Of Abuse
        Of Process; This Is Evident From Bretford's Demonstrated Efforts
        To Pursue Its Baseless Claims To Such Extremes That Smith Was
        Forced To Incur Fees Of More Than 17 Times The Value Of
        Bretford's Underlying Claim Of Lost Profits – All The While
        Bretford Maintained Outrageous Settlement Demands To Prolong
        The Litigation ................................................................................ 11

    3.   Bretford's Conduct Unreasonably Increased The Cost Of
        Defending Against This Lawsuit ...................................................... 13

    D.   Other Courts Have Awarded Attorneys' Fees Under Similar
       Circumstances ................................................................................ 14

III.  CONCLUSION ............................................................................................ 15

## I.     INTRODUCTION

This case reflects an abuse of the legal system. Defendant, Smith System Manufacturing Company ("Smith"), was forced to incur nearly $900,000 in defense of a barrage of baseless claims over a period of nearly six years -- which in truth involved a mere $46,482.07 of alleged lost profits -- even if meritorious. The evidence shows that plaintiff, Bretford Manufacturing, Inc. ("Bretford"), intentionally saddled Smith and this Court with years of baseless litigation by (1) recklessly ignoring the factual predicate for entitlement to trade dress protection and other relief under the Lanham Act and applicable state law, (2) misrepresenting both the facts and law to this Court resulting in prolonged and unnecessary motions, briefs, and hearings; and (3) otherwise pushing its unsupported claims to the extreme in seeking treble damages, punitive damages, and attorneys' fees; all the while (4) refusing to accede to Smith's attempts to streamline this case and maintaining outrageous settlement demands at every turn.

Bretford had millions of dollars at stake in this case. But it was not the millions of dollars that Bretford pretended to expect by winning the case. No, it was the millions of dollars in excess profits that Bretford could make as long as it could keep this case alive. This is because, during the entire pendency of this litigation, Bretford had the Y-leg market to itself to the extent that no competitor dared to compete (like Smith did) and risk becoming the target of such oppressive litigation as Smith became. Bretford never had a prayer of prevailing on a trade dress claim -- as this Court later confirmed in its summary judgment. And Bretford never stood to win more than the lost profits on the subject sale to the DISD on its other claims which this Court valued at a mere $46,482.07. So why would a large and well established company with seasoned management spend hundreds of thousands of dollars to pursue a forty-six thousand dollar claim? It can only be because it stood to make millions of dollars in the marketplace by pursuing it. Bretford extorted Smith's consent to cease the lawful sale of Y-leg products, although settlement never materialized because Bretford also demanded a payment of $393,000.00. In this fashion, Bretford sought to obtain all sales of "Y-leg" tables with the exorbitant profits that usually result when competitors do not submit a competing bid. Bretford therefore used this litigation to eliminate, or at least limit, lawful competition of unprotected "Y-leg" school furniture by the shear force of oppressive litigation.

Under Seventh Circuit precedent, in evaluating whether a case is exceptional, so as to justify an award of attorneys' fees to a prevailing defendant, "the standard is not whether the claimant filed suit in good faith but, rather, whether the plaintiff's action was oppressive." *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). "A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *Id.* Here, Bretford's claims lacked merit from their inception; Bretford's actions demonstrate abuse of process, and Bretford's litigation conduct unreasonably increased the cost of defending the suit.

Accordingly, this is an exceptional case justifying an award of Smith's attorneys' fees. A fair estimate of the amount of fees expended by Smith in defense of this action is believed to be about $894,000 (through the date of judgment). Smith, as the prevailing party, is thus entitled to its attorneys' fees pursuant to 15 U.S.C. § 1117.[1] Smith is also entitled to its attorneys' fees pursuant to the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA").

## II.    SMITH SYSTEM IS ENTITLED TO AN AWARD OF ITS ATTORNEYS' FEES

### A.    The Standard For Award Of Attorneys' Fees To A Prevailing Defendant

Under the Lanham Act, the Court may award reasonable attorney fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). Such an award is within the district court's discretion and "this standard is a generous one." *FASA Corp. v. Playmates Toys, Inc.*, 108 F.3d 140, 144 (7th Cir. 1997). "Where the defendant is the prevailing party, the standard [for an "exceptional case"] is not whether the claimant filed suit in good faith but, rather, *whether the plaintiff's action was oppressive.*" *S Industries*, 249 F.3d at 627 (emphasis added). While Bretford's bad faith is abundantly evident in this lawsuit, a finding of bad faith is not necessary to find a case exceptional in justifying an award of attorneys' fees to a defendant. *Id.* at 1031 ("[B]ad faith is not the correct standard for determining whether to award attorneys' fees to the defendant in a Lanham Act case."). *See also, Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 126 F.3d 1028, 1030 (7th Cir. 1997) ("Even if a suit is brought in good faith, it could be so lacking in

---

[1] Smith System is a prevailing party because the Court's Orders of October 6, 2003 entered judgment "for Smith System and against Bretford on all claims including the Lanham Act claim." *See* Exhibit A.

merit or so burdensome to defend against as to be oppressive, in which event the defendant would have a powerful equitable claim to recover a reasonable attorneys' fee.")

The ICFA also authorizes the Court to award reasonable attorneys' fees to a prevailing party. 815 ILCS 505/10a(c); *Door Sys.*, 126 F.3d at 1029-31. The Seventh Circuit has held that the same oppression standard applicable to the Lanham Act is applicable to the ICFA. *Door Sys.*, 126 F.3d at 1030-31.

**B.     Smith Is The Prevailing Party In This Case**

After the Court's Orders of October 6, 2003, there can be no dispute that Smith is the prevailing party as to the entire case. On October 6, 2003 the Court entered judgment "for Smith System and against Bretford on all claims including the Lanham Act claim." (Ex.A.)

**C.     This Is An Exceptional Case**

To be entitled to an award of its attorneys' fees, Smith must demonstrate that this case is exceptional. As noted above, while there is ample evidence of Bretford's bad faith, it is not necessary for the Court to find that Bretford acted in bad faith in order to find that Bretford's actions were oppressive. *Door Sys.*, 126 F.3d at 1031. The standard is "whether the plaintiff's action was oppressive." *S Industries*, 249 F.3d at 627. "A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *Id.*

**1.     Bretford's Suit Lacked Merit From Its Inception**

Each and every one of Bretford's claims asserted in its complaint was baseless. Bretford was able to prolong this suit for nearly six years only by misrepresenting the law and the facts and otherwise misleading the Court. As discussed below in Section II.C.2., the evidence shows that Bretford used this litigation for abusive purposes.

Bretford brought a total of nine claims against Smith who brought *no counterclaims*. All of the resources expended by the parties' and the Court in this action resulted directly, and only, from Bretford's meritless claims.

### a. Bretford's Trade Dress Infringement Claim Was Supported By Absolutely No Evidence

Bretford filed its complaint alleging trade dress infringement, among other things. A finding of trade dress infringement required proof of a likelihood of confusion,[2] Bretford provided not one shred of evidence of a likelihood of confusion as to the origin of the sample table or of the tables actually sold to the DISD. Prior to commencing this lawsuit, Bretford had gathered no evidence that buyers of Y-leg products were confused or likely to be confused, and as this Court recognized, Bretford presented no such evidence in this case.[3] Indeed, no such evidence could have existed for the very reasons that this Court later held -- buyers of Bretford's and Smith's products *always* know exactly who is the origin of the products they buy.[4] When Bretford filed its complaint, it already knew that the facts precluded any likelihood of confusion.[5]

---

[2] As of 1998 and prior to *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205 (2000), in order to establish trade dress infringement, Bretford needed to prove that "(1) its trade dress is inherently distinctive or had acquired secondary meaning, and (2) that the similarity of the defendant's trade dress caused a likelihood of confusion on the part of customers as to the source or affiliation of the products." *Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633, 636 (7th Cir. 1999).

[3] In its order of June 2000, the Court made the following statements. "Plaintiff offers no evidence that customers care whether they get computer tables with V-shaped legs from Bretford or whether they get a similar table from Smith." "Plaintiff has not presented evidence from which it could reasonably be found that the similar leg, when taken, as it must be, with the related promotional materials and packaging materials, in the context of an industry where the manufacturers primarily sell through dealers and a bidding process, would create a likelihood of confusion." "[T]here are numerous points in the process where customers can identify and ensure that they purchase a specific manufacturer's table if they wish." "As discussed earlier, however, customers who do not care about the source of their goods are not considered in a likelihood of confusion analysis." "There is simply no evidence that Smith tried to pass off its table as a Bretford CONNECTIONS table." *Bretford,* 116 F. Supp. 2d at 957-59.

[4] *See* footnote 3, *supra.*

[5] For example, Bretford knew that: **(1)** the DISD issued a "Request for Sealed Bid" identifying the Bretford tables merely as a reference product, and expressly permitted any "approved equal." The Request for Sealed Bid specifically contemplated non-Bretford tables, as it required the bidder to identify the "brand" or manufacturer of the item bid if not a Bretford table: "You must indicate in the space below brand and model/catalog number being offered. Include with your bid any catalogs, brochures or other information relative to the characteristics of the product on which you are bidding." (Ex. B.) **(2)** The dealer that bid the Smith System tables clearly identified the tables as Smith System tables as instructed on the Request for Sealed Bid. (Ex. C.) **(3)** Bretford's own dealer was told by the DISD, the only purchaser of relevance here, that the DISD knew that the tables were not Bretford tables. *Bretford Mfg., Inc. v. Smith System Mfg. Co.,* 116 F. Supp. 2d 951, 959 (N.D. Ill. 2000) ("When shown what was being used, he thought it was a Bretford table. But the school's representative told him it was not, quickly dispelling any confusion.").

Moreover, Bretford is one of the larger competitors in the market and knows as well as any that no school district is ever in doubt about the origin of the goods they buy. It would therefore be impossible for Bretford to carry the burden to prove that the DISD or any other customer was likely to be confused. Prior to Bretford's commencement of this lawsuit in 1998, the Seventh Circuit clearly stated that "the most important factors in evaluating confusion in product configuration cases are marketing and labeling of products." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996) *citing Versa Prods. Co. v. Bifold Co. Mfg. Ltd.*, 50 F.3d 189, 212 (3d Cir. 1995).[6]

Furthermore, the testimony of Bretford's own witness, available to Bretford before the lawsuit was commenced, confirms the absence of the required element of proof of a likelihood of confusion—that customers care about the origin of the goods offered and sold. Mr. Ken Wodek testified that the customer upon which Bretford based its lawsuit, the DISD, in fact, did *not* care who manufactured the tables so long as they met the specifications and were offered at the lowest price. (11/07/02 Hrg. Tr. at 90, lns. 15-18: "Q. [The DISD doesn't] care who the manufacturer is as long as it meets specifications and is the lowest bid? A. Right."). (Ex. D.) While its own witness testified that the DISD did not care, Bretford never offered *any* evidence that the DISD did care.[7] Yet Bretford put Smith to tremendous cost all the while knowing it could never prove a likelihood of confusion, an essential element of its cause of action.

When Bretford started this conflagration, it was either crystal clear or readily determinable by anyone who might ask that (1) the DISD and other sophisticated customers like it know exactly who is the source of the products they buy making confusion impossible; (2)

---

[6] *See also Versa*, 50 F.3d at 203 ("in trade dress infringement suits where the dress inheres in a product configuration, the primary factors to be considered in assessing likelihood of confusion are the product's labeling, packaging, and advertisements.").

[7] It is safe to assume that if Bretford had the evidence necessary to prove likelihood of confusion—that the DISD *cared* about the origin of the legs on the sample table—it would have offered it. Since Bretford did not offer such evidence, it is safe to assume that Bretford had no such evidence. Without such evidence, Bretford's trade dress infringement claim was completely without merit because it is black letter law that customers who do not care about the source of goods (much less component parts of samples) cannot be the basis of an assertion of likelihood of confusion. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:94, at 23-244 (2003) ("The law cannot attempt to protect those buyers who do not buy on the basis of marks or who chose to buy goods based on other competitive criteria. In any event, such an 'indifferent' buyer is not affected by similar trademarks if that is not the criterion by which he makes his purchasing decisions."). (Ex. E.)

Seventh Circuit precedent clearly established that, under the circumstances surrounding the DISD purchase of the Smith tables, no likelihood of confusion could be found; and (3) the DISD, a sophisticated purchaser, did not care who was the manufacturer of the tables much less who made the Y-legs used on the sample.

On July 21, 1998, only seven months into this lawsuit, this Court questioned the legitimacy of the trade dress claim at the Rule 16 scheduling conference. At that conference, the Court observed that "there is a very substantial issue as to likelihood of confusion," i.e., proofs on this issue presented a serious hurdle for Bretford to prevail in this case. *Bretford*, 116 F. Supp. 2d at 955. Prudently, the Court stayed all other discovery, evidently intending to spare itself and the defendant needless litigation time and expense in the event that the claim was dismissed, as it later was. But still, Smith was put to substantial legal fees conducting discovery on this meritless claim. In granting Smith's motion for summary judgment of no likelihood of confusion, the Court made findings of fact that Bretford knew or should have known before commencing litigation. *See* fn. 3, *supra*.

As noted by the Court, Bretford provided absolutely no evidence to support its allegations of likelihood of confusion, a necessary element of a trade dress infringement case. No such evidence existed, and Bretford knew this before it even filed its complaint in January 1998.

> **b.     Bretford's Reverse Passing Off Claim Was Prosecuted For Nearly Four Years Due Only To Bretford's Misleading The Court And Misrepresenting The Relevant Case Law**

After its trade dress infringement claim was dismissed, Bretford fell back to its reverse passing off claim in order to keep the litigation going, a claim which has been characterized by the Court as the "tail on the dog"[8] and pursuant to which Bretford could at best recover compensatory damages of $46,482.07 -- the profits Bretford claimed to have lost as a result of Smith's alleged reverse passing off.

On September 27, 2000, Smith moved for summary judgment on all remaining counts, including the reverse passing off count, because a finding of no likelihood of confusion defeated the remaining counts. Smith's position was well supported by case law from both the Seventh

---

[8] Damages Hearing On Reverse Passing Off – November 7, 2002, p. 16, Ex. F.

Circuit and this Court. *See* Defendant's Memorandum in Support of its Motion for Summary Judgment on all Counts, Ex. G, *citing Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202 (7th Cir. 1990) (likelihood of confusion is an element of reverse passing off); *PS Promotions, Inc. v. Stern*, 2000 U.S. Dist. LEXIS 3075 (N.D. Ill. March 8, 2000) (same).

In its opposition brief, Bretford correctly stated the test for reverse passing off, but then misrepresented the facts to fit that definition. Bretford noted that

> [r]everse passing off 'occurs when a person removes or obliterates the original trademark without authorization, before reselling goods produced by someone else.'

*See* Bretford's Memorandum of Law in Opposition to Smith's Motion for Summary Judgment on All Counts at 4, Ex. H. To support its case of reverse passing off, Bretford then misrepresented the facts at two separate locations in its opposition brief to conform to its cited inapposite case law.

> [1] the evidence so far reveals that when Smith submitted its sample table to the DISD, the legs were taken from a Connections series table **and all Bretford identifying marks were removed**. . . . [2] **Ken Wodek testified that Smith removed all identifying marks from the Connections series table legs** which were presented to the DISD as part of a Smith sample table.

*See id* at 6 and 7 (emphasis added). Bretford cited to the Wodek Declaration, at paragraph 5, to support these factual assertions. The Wodek Declaration, however, does not support this statement. At paragraph 5 of his declaration, Mr. Wodek states only,

> [s]hortly thereafter, I went to DISD and viewed the table submitted by Smith which won the bid. I immediately thought the table was Bretford Connections series table because it incorporated a unique "V" shaped leg design which had been manufactured and sold exclusively by Bretford for seven consecutive years. Moreover, there were no labels or other marks anywhere on the table which identified a source of the product, much less Smith as the manufacturer. [Ex. I.]

**Nowhere does Mr. Wodek state that Smith removed all of the identifying marks from the Bretford legs**. Furthermore, there has been absolutely no evidence since that time that Smith removed any identifying marks from the Bretford legs. **Rather, the evidence was to the contrary**.[9]

---

[9] At the hearing of April 2001, Mr. Wodek conceded that the Bretford tables are unmarked and bear no trademarks. April 23, 2001 Hearing transcript at p 89, ln. 19 to p. 90, ln. 4 and p. 98, lns. 1-4, Ex. J.

Bretford further misrepresented the facts when it stated, "there is eye witness testimony, albeit contested, that Smith represented Bretford's table legs as its own in order to win the DISD contract." *See* Bretford's Memorandum of Law in Opposition to Smith's Motion for Summary Judgment on All Counts at 4, Ex. H. Bretford provided **no record cite for this factual assertion**. There has been absolutely no "eye witness testimony" in this case that anybody at Smith made any representations that the alleged Bretford legs were Smith legs.

Bretford did not stop simply with misrepresenting the facts; Bretford also misrepresented the law. Specifically, Bretford cited cases for the proposition that a cause of action for reverse passing off does *not* require a finding of likelihood of confusion. *See* Bretford's Memorandum of Law in Opposition to Smith's Motion for Summary Judgment on All Counts at 4-7, Ex. H. In fact, each of the cases cited by Bretford *does* require a showing of likelihood of confusion. *See* Defendant's Reply Memorandum in Support of its Motion for Summary Judgment on all Counts at 4-6, Ex. K. Bretford went on to state that the Seventh Circuit "does not expressly require a plaintiff to show a likelihood of consumer confusion" to make out a claim of reverse passing off. *See* Bretford's Memorandum of Law in Opposition to Smith's Motion for Summary Judgment on All Counts at 6. (Ex. H.) What Bretford did not tell the Court is that the Seventh Circuit case that it cited, *Kennedy*, is not a reverse passing off case or even a Lanham Act case; it is a copyright case. And, *Kennedy* cites a case in its reverse passing off discussion that <u>does</u> require a finding of likelihood of confusion for a finding of reverse passing off – *Web Printing, supra*.

In view of this briefing, the Court denied Smith's motion for summary judgment on all counts. Minute Order dated January 10, 2001, Ex. L.

The parties then prepared for trial on the single issue of whether Smith had used Bretford legs on its sample. The trial took place in April and June 2001. At the conclusion of that trial, the Court found that Smith had used the Bretford legs on the sample table and suggested that Bretford use that finding to support any motion it might be interested in making: "Well, now, maybe at this point then Bretford should make a motion based upon these findings. Whatever relief would be appropriate based on these findings, I assume you should move for it." June 5, 2001 transcript at 397, lines 1-4, Ex. M.

Bretford's counsel represented to the Court that based on this single finding, the Court could enter judgment of liability for reverse passing off: "I think today you can enter a finding of

liability. You can enter a finding of liability and set a status date or for submission of damages of what the damages are, because you have essentially found liability -- found liability against the defendants for these remaining claims." *Id.* at p. 398, lines 18-23.

Bretford, however, did not inform the Court that binding Seventh Circuit precedent required a further finding of likelihood of confusion before liability for reverse passing off could be found, precedent that Smith had cited extensively in earlier briefing. *See* Defendant's Memorandum in Support of its Motion for Summary Judgment on all Counts, Ex. G, *citing Web Printing, supra*; and *PS Promotions, supra.*

The parties then embarked on damages briefing to determine the damages to which Bretford was entitled for Smith's alleged reverse passing off. Thereafter, Smith sought to "right the ship" in the face of the gale force misrepresentations that Bretford was blowing. On May 22, 2002, Smith filed its Brief on Plaintiff's Failure to Show Table Legs are not Functional -- a corollary (in this case) to an absence of likelihood of confusion. Smith pointed out to the Court that under the Lanham Act there must be some protectible interest about which consumers actually care and that Bretford had failed to prove this critical element of its case. *See* Defendant's Brief on Plaintiff's Failure to Show Table Legs are not Functional at 3, Ex. N ("Since Bretford has not shown that its table legs are not functional -- and the Court has already ruled that Bretford's table leg does not have secondary meaning and thus cannot be 'infringed' -- Bretford is not entitled to monetary damages for Smith System's alleged act of passing off a Bretford table leg on a Smith System sample table.").

Smith also brought to the Court's attention numerous cases where an accused infringer used a photograph of the plaintiff's unprotected product to elicit sales. In each of those cases, no liability was found under the Lanham Act. *See* Defendant's Brief on Plaintiff's Failure to Show Table Legs are not Functional at 4-5, Ex. N.

In response, Bretford again misrepresented the facts and the law. Bretford again cited to inapposite cases where the defendant intentionally obliterated the plaintiff's mark and replaced it with the defendant's own. *See* Plaintiff's Response -- Functionality is not a Defense to a Finding of Reverse Passing off and Misappropriation at 2-4, Ex. O. Bretford then again misrepresented the facts to fit into the inapposite cases it had cited. Bretford made the following factual

statements **with absolutely no record support**, assertions that the Court later found to be unfounded:

- "Smith then delivered the table to the [DISD] and knowingly and falsely represented that the sample was a SMITH product."
- "Here, Smith removed or failed to use the BRETFORD mark."
- "Smith used Bretford's actual product without the BRETFORD trademark and misrepresented it to be Smith's."
- "Smith misrepresented the sample Smith table to be an actual Smith table, when in fact that table was comprised of <u>Bretford</u> table legs, thereby expressly misrepresenting the origin of the table."

Plaintiff's Response -- Functionality is not a Defense to a Finding of Reverse Passing off and Misappropriation at 2, 3, 4, 5, Ex. O. [10]

In reply, Smith reiterated that the Lanham Act is not applicable where the product in question is not protected such that the public would even care about its source: "the clear and unrebutted precedents establish that there is <u>no</u> liability for damages where, as here, one simply uses <u>as a sample</u> a product or product component that has no secondary meaning and/or is functional. . . . Courts have consistently held that there is no liability for damages for use of another company's product as a sample where that sample product is merely functional or lacks secondary meaning." Defendant's Reply Brief on the Issue of Functionality at 1, 2, Ex. P. [11]

_____

[10] In its ruling of October 6, 2003, the Court found that Smith System made no such misrepresentations: "[E]ven if the sample table were considered the good that was sold to the District by Smith, **there was no misrepresentation as to the 'origin' of the sample**. Again, under the analysis of the Supreme Court, the origin was Smith. It makes no difference that Smith acquired the leg from Bretford, because the District was not concerned with the source of the component parts. It was interested in a table that conformed to the bid specifications, and the sample met that requirement. The evidence at the hearing was quite clear that the District was indifferent to the source of the component parts; Bretford's argument to the contrary misinterprets the record." (Emphasis added.) (Ex. A.)

[11] Smith System has consistently argued that it is entitled to use the Bretford legs in any way it desires. Most recently, Smith System raised this issue in its briefing on lost profits. *See* Smith System's Reply Brief on Plaintiff's Right to Recover Lost Profits on Any Theory, p. 6-7, Ex. Q ("Since the Court has found that the Y-leg is not identified by the market with Bretford, the Y-leg design is not protected and anyone is free to copy it. Smith System was free to use the Y-leg on the sample table and in the products it sold to the DISD. Smith System was also free to obtain Y-legs from any number of sources, including taking Y-legs from a Bretford table owned by Smith System and using them on the Smith System sample table."). *See also* Smith System's Brief on Plaintiff's Right to Recover Lost Profits on Any Theory, p. 1, Ex. R.

Based on the briefs, the Court concluded that "the issue of functionality is not involved," and directed the parties to proceed to trial for a determination of plaintiff's lost profits. Thus, as a result of Bretford's misrepresentations of fact and law, the reverse passing off claim, which was never worth more than $46,482.07, plunged the parties and the Court into still further protracted litigation -- for three years.

### c. Bretford's Illinois Claims Were Equally Without Merit

The Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1-7, require that when the dispute involves businesses that are not consumer's of each other's products, that the defendant's conduct implicates consumer concerns. *See Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 867-68 (7th Cir. 1999). Again, Bretford offered no evidence that Smith's conduct implicated consumer concerns. Bretford was the only party to suffer injury when it lost the contract to the DISD. As the Illinois Consumer Fraud and Deceptive Business Practices Act and the Deceptive Trade Practices Act are codifications of common law, Bretford's Illinois common law claims were therefore equally without merit.

> **2.  Bretford's Prosecution Of This Suit Reflects Elements Of Abuse Of Process; This Is Evident From Bretford's Demonstrated Efforts To Pursue Its Baseless Claims To Such Extremes That Smith Was Forced To Incur Fees Of More Than 17 Times The Value Of Bretford's Underlying Claim Of Lost Profits – All The While Bretford Maintained Outrageous Settlement Demands To Prolong The Litigation**

Abuse of process is "the misuse of legal process to accomplish some purpose outside the scope of the process itself." *Neurosurgery and Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 929 (Ill.App.Ct. 2003). A claim for abuse of process requires two elements to be met: (1) the existence of an ulterior purpose or motive (such as extortion, intimidation, or embarrassment) and (2) some act in the use of process that is not proper in the regular course of proceedings. *Id.* at 929-930.

In its original Complaint, Bretford sought an injunction to prohibit Smith from selling Y-leg products. Throughout the litigation, Bretford has made it clear to Smith that no settlement could be reached without Smith agreeing to withdraw from the Y-leg product market (either by

abandoning the market or agreeing to an unjustified royalty to which no other manufacturer was subjected). (Risdall Declaration at ¶ 4, Ex. W; *see also* Lazar ltr. to August dated July 25, 2002 at 2, Ex. S.) Smith, however, knew that Bretford could not prevail on its claims because, as noted above, there existed absolutely no evidence of likelihood of confusion. (Risdall Decl. at ¶¶ 3-4.) For example, buyers such as the DISD could never be confused as to the source of any goods because the bidding forms submitted by dealers in response to the school districts' requests for proposal must specify the manufacturer and model number, and the paperwork and packaging always identify the source. (*Id.* at ¶ 3.) Smith's position proved to be correct when the Court granted Smith's motion for summary judgment of no likelihood of confusion.

Notwithstanding Smith's victory on the main claim of Bretford's case – and the only claim which could conceivably entitle Bretford to an injunction barring Smith from the Y-leg market – Bretford continued to demand that any settlement of the case should include Smith's agreement to withdraw from the Y-leg product market (either by abandoning the market or agreeing to an unjustified royalty). (Risdall Declaration at ¶ 4.) Smith wanted desperately to settle this case because of the drain on the company and the perception in the market place that Bretford was creating regarding Smith's copying of the Y-leg product. (*Id.* at ¶ 5.) It is therefore evident that Bretford sought to use the weight of oppressive litigation to extort from Smith an agreement to withdraw from lawful sales of Y-leg product (when Bretford had no right to seek such an agreement and Smith had a legal right to continue selling its Y-leg products).

Thus, for five years, this litigation has kept Smith (and other competitors equally concerned that they would be the target of Bretford's oppressive litigation) from giving Bretford meaningful competition. (Connolly Declaration at ¶ 11, Ex. Y.) During this time, with the field mostly to itself, Bretford made more sales at higher profits than it would have made if Smith and others had offered meaningful competition. (Risdall Declaration at ¶¶ 6-10; Connolly Decl at ¶ 11.)

Bretford not only obtained most of such business, but it also made windfall profits by keeping competitors out of, or at least inhibiting their entry into, the field. For example, in 2002, the Gwinnett County Public School District in Gwinnet County, Georgia, bought Bretford's Connections Y-leg product without competitive bids at $121.54 for smaller tables (30"x36") and $157.30 for larger tables (30"x72"). (Risdall Declaration at ¶ 9.) When Smith offered a

- 12 -

competing bid in 2003, Bretford's pricing dropped 21% (from $121.54 to $95.94) for the smaller tables and 13% (from $157.30 to $137.39) for the larger tables, *i.e.*, Bretford dramatically reduced its bid from its actual sales price of 2002. (*Id.* at ¶ 10.)   This price drop from 2002 to 2003 in light of the Smith competition could only constitute pure profit to Bretford.   These profits are the real reason that Bretford brought and sustained this lawsuit for so many years.

It can be further seen from Bretford's unrelenting and aggressive pursuit of the reverse passing off claim, that Bretford was using this lawsuit as a vehicle to extort Smith's lawful rights – and to otherwise keep Smith off the playing field more than to win legitimate damages. Standing to gain no more than the lost profit from a single sale to the DISD—an amount this Court eventually fixed at $46,482.07—Bretford, nevertheless, spent at least $444,995 pursing this claim for nearly six years.  By keeping the case alive, Bretford reaped windfall profits and put Smith to hundreds of thousands of dollars in defense costs.[12]  Specifically, Bretford earned millions of dollars of its Y-leg table product during the course of this litigation with little or no competition from other third parties. (Connolly Declaration at ¶¶ 10-11, Ex. Y.)

### 3. Bretford's Conduct Unreasonably Increased The Cost Of Defending Against This Lawsuit

Bretford brought a total of nine claims under the Lanham Act and various state laws. Smith System did not file a single counterclaim.  Bretford was the cause of *all* of the costs of this litigation.  Rather than investigating and seeking recovery on well-founded claims, Bretford sued Smith System on unsupported claims and then pressed the margins at every opportunity without regard to costs.  As set forth above in Section II.C.1., Bretford's claims were meritless from their inception and never should have been brought.

Not only did Bretford pursue meritless causes of action, but it also pursued enhanced damages, punitive damages, and attorneys fees, all of which were denied it by the Court because they were either unsupported in law or otherwise not warranted.  The Court ruled that this could not be a case for enhanced damages because damages are readily ascertainable -- this was true from the start.  Order dated February 26, 2003, Ex. U.  It ruled that punitive damages cannot be

---

[12] *See* Gilson, *Trademark Protection and Practice*, § 14.03[9][a][iii][B] at 14-113, relevant excerpt attached at Ex. X, ("A suit that is harassing, intimidating or filed merely as a competitive ploy should result in an award of attorneys' fees to prevailing defendants.  If a court can determine that the case was brought as a form of economic coercion or to intimidate a competitor, it will award fees.")

awarded because they are expressly prohibited by the Lanham Act—that also was true from the start -- and because the finding of vicarious liability would not support punitive damages under the Illinois corporate complicity rule. Order dated May 6, 2003, Ex. V. And, while it has denied Bretford's fee motion because Bretford has not prevailed, Bretford's claim for fees was also meritless under the Illinois corporate complicity rule. *See* Smith System's Reply Brief Challenging the Reasonableness of Bretford's Request for Attorneys' Fees at 3 (filed June 6, 2003 under seal). Yet, Bretford put Smith to tens of thousands of dollars in costs defending its motion for hundreds of thousands of dollars of fees.

Finally, Bretford refused repeated attempts by Smith to stipulate to the damage claim. The parties had already agreed to the amount in controversy but Bretford demanded that any stipulation include a further acknowledgment that treble damages were appropriate. (Menchaca ltr. of Oct. 31, 2002, Ex. Z.) This forced Smith to undertake a blatantly unnecessary damages trial.

**D.      Other Courts Have Awarded Attorneys' Fees Under Similar Circumstances**

Under guidelines similar to the Seventh Circuit's oppressive standard for "exceptional cases," other courts have awarded attorneys' fees to prevailing defendants. Similar to the circumstances is this case, these courts have not required a finding by the court of bad faith on the part of the plaintiff, although it can be a factor. The courts found cases exceptional because the plaintiff's lawsuit lacked merit and had elements of abuse of process.

- *Ale House Management, Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000) – affirming fee award to defendant requiring something less than bad faith and finding that plaintiff's economic coercion of defendant and groundless arguments made case exceptional.

- *Yankee Candle Co. v. Bridgewater Candle Co.*, 140 F. Supp. 2d 111, 121-22 (D.Mass. 2001) -- awarding fees to defendant, finding that bad faith was not required, and case was exceptional under Lanham Act because plaintiff's lawsuit was abusive, expensive and plaintiff pursued unfounded claims.

- *J & J Snack Foods, Corp. v. Earthgrains Co.*, 2003 WL 21051711, *3 (D.N.J. May 09, 2003) – finding case exceptional and awarding fees to a prevailing defendant stating that plaintiff need not act in bad faith for court to award fees to defendant, though bad faith is an appropriate factor. The court should look at whether plaintiff's case was groundless, unjustified, or frivolous and whether the plaintiff's conduct was vexatious.

- 14 -

*See also, Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1156 (9th Cir. 2002) (affirming the district court's fee award to the defendant, holding that an exceptional case under the Lanham Act is met when the case is either groundless, unreasonable, vexatious, or pursued in bad faith). Such is the case here.

## III.    CONCLUSION

Bretford should never have filed this case, and in any event, should not have used it as a vehicle to bury its competitor, Smith, under the weight of nearly six years of oppressive litigation. Smith respectfully submits that justice demands that it be reimbursed for the legal fees that it incurred in defending this action.

Respectfully submitted,

Dated: December 2, 2003

Thomas J. Wimbiscus
Alejandro Menchaca
Dennis P. Hackett
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL  60661
(312) 775-8000

Attorneys for Defendant,
SMITH SYSTEM MANUFACTURING
COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRETFORD MANUFACTURING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 98 C 0287 |
| | ) | |
| v. | ) | Judge John F. Grady |
| | ) | |
| SMITH SYSTEM MANUFACTURING | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below, a copy of the following documents:

1. Smith System's Memorandum In Support of its Motion for Attorneys' Fees;

2. Smith System's Exhibits A-Z in Support of its Motion for Attorneys' Fees;

3. Smith System's Exhibit S in Support of its Motion for Attorneys' Fees (under seal);

were served on the following opposing counsel by hand-delivery:

Bart A. Lazar
SEYFARTH SHAW
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603

Date:   December 2, 2003