**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

```
BRETFORD MANUFACTURING, INC., )
                              )
          Plaintiff,          )
     v.                       )    No. 98 C 0287
                              )
SMITH SYSTEM MANUFACTURING    )
COMPANY,                      )
                              )
          Defendant.          )
```

**MEMORANDUM OPINION AND ORDER**

The lengthy proceedings in this court were concluded by our ruling in Bretford Manufacturing, Inc. v. Smith System Manufacturing, Co., 286 F. Supp. 2d 969 (N.D. Ill. 2003), where we granted the defendant Smith's motion to reconsider our earlier holding that it had been guilty of "reverse passing off" in violation of section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). We entered final judgment in favor of Smith, and the Court of Appeals affirmed, Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp., 419 F.3d 576 (7th Cir. 2005).

Smith has now moved for an award of attorneys' fees under § 1117(a) of the Lanham Act, which authorizes an award of reasonable attorneys' fees to the prevailing party "in exceptional cases."

**DISCUSSION**

The parties disagree as to whether this is an "exceptional" case. Bretford emphasizes the general rule that, where a defendant

is the prevailing party, the plaintiff's action must have been "oppressive," and that this usually involves a showing of bad faith, dilatory and vexatious tactics, and something akin to abuse of process. Bretford is correct that these aggravating factors would make a case exceptional, but, as Smith argues, a case can be found to be exceptional simply on the basis that it is wholly lacking in merit. A case in point is <u>S Industries, Inc. v. Centra 2000, Inc.</u>, 249 F.3d 625, 626 (7th Cir. 2001), where Judge Lindberg of this court had awarded fees to the prevailing defendant under § 1117(a) because he found the claims to be "completely unfounded" and because the defendant's "procedural maneuvering multiplied the cost of defending against the suit." The Seventh Circuit affirmed, noting that each of the grounds relied upon by Judge Lindberg would independently justify the fee award:

> This was not a murky case. <u>Based solely on the weakness of S Industries' claims, Judge Lindberg acted well within his discretion in granting attorneys fees</u>.
>
> And there is more. Not only did S Industries forward indefensible claims, but it added to the cost and aggravation of this meritless litigation by not responding to discovery requests, repeatedly failing to properly serve or sign motions filed with the court, and failing to satisfy the requirements of the local rules of the district court.

<u>Id.</u> at 627-28 (emphasis added). We intend to focus on the merit of Bretford's claims, or a lack thereof, rather than its intent and motives in filing and prosecuting the case. We believe <u>S Industries</u> is authority for a fee award should we find the claims

to be sufficiently weak to make the case exceptional.

Bretford's claims were of two basic kinds. One was a straight Lanham Act trade dress claim, alleging that Smith's V-shaped tables infringed the trade dress of Bretford's V-shaped design of its tables. Bretford's other principal claim was the "reverse passing off" allegation based on Smith's use of a Bretford leg in a table sample Smith used to obtain a contract with the Dallas school system.

### **Trade Dress Claim**

We granted summary judgment to Smith on the trade dress claim. <u>Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.</u>, 116 F. Supp. 2d 951 (N.D. Ill. 2000). The basis of the ruling was that there was no evidence that the similarity of table design, or other trade dress, would be likely to confuse consumers as to the source of the tables. The Court of Appeals agreed. <u>See</u> <u>Bretford</u>, 419 F.3d at 579-80.

Bretford argues that, in addition to likelihood of confusion, it had an alternative basis for its trade dress claim. It contends that it had a right to the protection of the <u>distinctive design</u> of its tables, quite aside from any question of confusion. Bretford says it was not until the decision of the Supreme Court in <u>Wal-Mart Stores, Inc. v. Samara Brothers, Inc.</u>, 529 U.S. 205 (2000), two years after the filing of the complaint in this case, that a design infringement claim was held to require a showing of likelihood of

confusion.  Bretford is wrong about this, as the Wal-Mart opinion itself makes clear:

> The text of § 43(a) provides little guidance as to the circumstances under which unregistered trade dress may be protected.  It does require that a producer show that the allegedly infringing feature is not "functional," see § 43(a)(3), <u>and is likely to cause confusion with the product for which protection is sought, see §4 3(a)(1)(A), 15 U.S.C.. § 1125(a)(1)(A).  Nothing in § 43(a) explicitly requires a producer to show that its trade dress is distinctive, but courts have universally imposed that requirement, since without distinctiveness the trade dress would not "cause confusion . . . as to the origin, sponsorship, or approval of [the] goods," as the section requires.</u>  Distinctiveness is, moreover, an explicit prerequisite for registration of trade dress under § 2, and "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (citations omitted).

529 U.S. at 210 (emphasis added).  What Wal-Mart held was that, for various practical and policy reasons, mere proof of distinctive design would no longer be sufficient to prove likelihood of confusion.  Instead, it would be necessary for the plaintiff to prove that the design had "secondary meaning."  The Court of Appeals opinion in the instant case commented on the significance of Wal-Mart:

> The district court found that V-shaped legs do not signal Bretford as a source.  The record supports this conclusion; indeed, Bretford has <u>no</u> evidence that the leg design prompts "Bretford" in buyers' minds.  There are no surveys and no evidence of actual confusion.  Both Bretford and Smith System sell through distributors and field representatives to sophisticated buyers who know exactly where their goods are coming from.

> Many buyers ask for tables with V-shaped legs, and Bretford insists that this shows that they want its Connections™ furniture; quite the contrary, this form of specification does more to imply that the leg design is functional than to show that anyone cares who makes the table. In the end, all Bretford has to go on is the fact that it was the only maker of such tables for eight years and spent more than $4 million to promote sales. If that were enough to permit judgment in its favor, new entry would be curtailed unduly by the risk and expense of trademark litigation, for <u>every</u> introducer of a new design could make the same sort of claim. "Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based on alleged inherent distinctiveness." <u>Wal-Mart</u>, 529 U.S. at 213, 120 S. Ct. 1339.
>
> Originators such as Bretford may receive protection via design patents, and strictly aesthetic features of products may be copyrighted. "The availability of these and other protections greatly reduces any harm to the producer that might ensue" from limiting trademark protection to features that have acquired secondary meaning. <u>Wal-Mart</u>, 529 U.S. at 214, 120 S. Ct. 1339. Bretford did not obtain patent or copyright protection, so it cannot block Smith System's copy-cat tables. Even if the record had evidence of secondary meaning, Bretford likely would lose because the leg design appears to be functional, but we need not explore that issue.

419 F.3d at 579-80.

Proof of likelihood of confusion, then, has always been a necessary element of a Lanham Act trade dress claim, before <u>Wal-Mart</u> as well as after. Bretford's complete lack of any evidence of likelihood of confusion makes this an exceptional case in our view, and we will award reasonable fees for the work Smith was required to do in defense of the trade dress claim.

**Reverse Passing Off**

We held a trial on the reverse passing off claim and concluded that Smith had willfully passed off a set of Bretford table legs as Smith table legs when it submitted the table sample to the Dallas school district.[1]  When the Supreme Court decided the case of Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), Smith moved for reconsideration and we granted the motion, Bretford, 286 F. Supp.2d 969.  We agreed with Smith that Dastar limits trade dress protection to the finished product that is sold to the consumer, such as the table, rather than to component parts of the product, such as the table leg.  As the Court of Appeals summed up Dastar:

> The right question, Dastar holds, is whether the consumer knows who has produced the finished product.  In the Dastar case that was Dastar itself, even though most of the product's economic value came from elsewhere; just so when Smith System includes components manufactured by others but stands behind the finished product. The portion of § 43(a) that addresses reverse passing off is the one that condemns false designations of origin. "Origin" means, Dastar holds, "the producer of the tangible product sold in the marketplace". 539 U.S. at 31, 123 S. Ct. 2041. As far as Dallas was concerned, the table's "origin" was Smith System, no matter who made any component or subassembly.

Bretford, 419 F.3d at 581.

---

[1] "Someone in the employ of Smith, in my opinion, did misrepresent the origin of the table legs on that Dallas school district sample." (Tr. of Oral Decision, June 5, 2001, Ex. J to Bretford's Surreply Memorandum at 396); "At the conclusion of the evidentiary hearing regarding the contract with the Dallas Independent School District (DISD), the court found that the defendant Smith had been guilty of willfully passing off a set of Bretford table legs as Smith table legs." (Mem. Op. of October 21, 2001, Ex. A to Bretford's Surreply Memorandum at 1).

Smith wants fees for defending the reverse passing off claim. It argues that this aspect of the case was also "exceptional" because Bretford persuaded us that a likelihood of confusion was not a necessary element of a reverse passing off claim. Had Bretford not misled us in this way, the argument goes, there would have been no reverse passing off trial and no additional proceedings to determine damages.

It is true that the parties spent considerable time briefing this question of whether reverse passing off required likelihood of confusion, each citing cases in support of its position. We never made a definite ruling on the issue. Instead, we elected to determine what the facts were in the Dallas school district matter by holding an evidentiary hearing. Bretford's allegation was that, in passing off Bretford's leg, Smith had been guilty of a misrepresentation that enabled it to obtain the contract with the district. If likelihood of confusion was necessary, Bretford had a plausible argument that, in passing off the Bretford leg as its own, Smith had caused actual confusion as to the source of the leg. As it turned out, the evidence showed that the district did not care who made the table, let alone who made the leg. In the end, therefore, there was no question of "confusion" in regard to the leg. By the end of the hearing, however, we were focused on the question of whether Smith had used the leg (which it denied), not whether the school district was confused as to its origin.

We believed that Bretford had made out of a case of reverse passing off. If we erred in thinking that proof of confusion on the part of the school district was a necessary element, it was our own error. Smith's arguments were not responsible, because we did not rely upon them. Our own research is what we ultimately relied on, and it left us in sufficient doubt that we elected to proceed with the hearing.

We reject Smith's argument that the confusion issue clearly entitled it to judgment on the passing off claim independent of the Dastar holding. Bretford's position on the confusion issue was not so clearly unmeritorious as to make that aspect of the case "exceptional." Neither does its failure to anticipate Dastar, a failure it shared with Smith and the court.

We find that the case is not exceptional in regard to the reverse passing off claim, and no fees will be awarded for the defense of that claim.

## CONCLUSION

Smith System Manufacturing Inc.'s motion for an award of attorneys' fees against Bretford Manufacturing Inc. is allowed as to the trade dress claim, pursuant to 15 U.S.C. § 1117(a).[2]  The

---

[2] Smith will be entitled to fees for all time reasonably spent on the trade dress infringement issue in this court even though some of that time may have overlapped the issues on which fees are not being awarded. For instance, attendance at status calls will be compensable time, since the time would have been spent regardless of whether there were issues in addition to the trade dress claim. On the other hand, time spent strictly on the reverse passing off issue will not be compensable.

The primary claim in this case was the trade dress claim, where Bretford

parties are directed to confer pursuant to Local Rule 54.3 in a good-faith effort to reach a pre-motion agreement on the amount of fees and related nontaxable expenses that should be awarded to Smith, prior to the filing of any fee motion.  This is without prejudice to Bretford's position that no fees or expenses should be awarded pursuant to § 1117(a).

If the parties are unable to agree upon an appropriate amount of fees and expenses by October 10, 2005, then, by November 28, 2005, they shall file the joint statement required by subdivision (e) of the Rule and the fee motion required by subdivision (f). Should further direction from the court be needed, it can be requested by the motion for instructions described in subdivision (g).

Date:     September 20, 2005

ENTER:    _____
          John F. Grady, United States District Judge

---

was hoping for an injunction that would have prevented Smith from selling V-shaped tables.  Having lost on that claim, Bretford then turned to the reverse passing off claim, involving only one contract and damages in the modest amount of $46,000.  This was clearly a sidelight of the case.  The same is true of Bretford's state law claims.  Smith has devoted one short paragraph of its memorandum in support of its motion for fees to a discussion of the Illinois Consumer Fraud Act (Mem. at 11), and it has not shown that Act would entitle it to fees in the circumstances of this case.