**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRETFORD MANUFACTURING, INC.,  )
                               )
                Plaintiff,     )
        v.                     )      No. 98 C 0287
                               )
SMITH SYSTEM MANUFACTURING     )
COMPANY,                       )
                               )
                Defendant.     )


**MEMORANDUM OPINION**

The remaining project in this protracted case is to set the amount of fees and costs Smith System Manufacturing Company ("Smith") will receive for defending Bretford Manufacturing Inc.'s ("Bretford") unfounded trade dress claim in this court and on appeal. The parties have submitted a Joint Statement pursuant to Local Rule 54.3 and have briefed the issues on which they disagree.

Before addressing the areas of disagreement, it will be useful to discuss the burden of persuasion. District courts are required to apply the rule announced in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983), that:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award

accordingly.

Later in the opinion, the Court observed that

> [a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award <u>and documenting the appropriate hours expended and hourly rates</u>. The applicant should exercise "billing judgment" with respect to hours worked, see <u>supra</u>, at 434, <u>and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims</u>.

<u>Id.</u> at 437 (emphasis added).

Determining how much time was "reasonably expended" by an attorney on a particular task is usually extremely difficult even if the attorney's billing records show the amount of time spent on the task. How long, for instance, should it have taken to research a specifically identified legal issue? Difficult as such determinations may be, this is the assignment district judges have been given, and they do the best they can. But when the time records do not describe tasks with particularity, and do not reveal the amount of time claimed to have been spent on each particular task, the judge is in no position to make a reasonable estimate of the amount of time that should have been required. This is the problem with "block billing," where the attorney simply lists a string of tasks performed on a particular day and the total time spent on them, without indicating how much time was spent on each of the tasks. Time records prepared in that manner clearly do not satisfy the documentation requirements of <u>Hensley</u>. This is not new

information.  It is what this court said in <u>Williams v. State Board of Elections</u>, 696 F. Supp. 1561 (N.D. Ill. 1988).  The Seventh Circuit has made it very clear that a fee applicant must show the time spent on specific tasks rather than simply the total time spent on a bundle of tasks.  In <u>Tomazzoli v. Sheedy</u>, 804 F.2d 93 (7th Cir. 1986), the Court affirmed the action of the trial court in reducing the fees requested by the applicant, noting, among other things, that many of the time entries gave only vague descriptions of the legal research done and, "[f]urther, the total numbers of hours attributable to research alone is uncertain; in some instances [the attorney] lists 'research' along with other tasks performed and gives but a single total for the combined work."  <u>Id.</u> at 98.  Other courts have made similar observations.  <u>See</u>, <u>e.g.</u>, <u>Robinson v. City of Edmond</u>, 160 F.3d 1275, 1281 (10th Cir. 1998) ("[A] district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks.'"); <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 971 (D.C. Cir. 2004) (commenting that when time records "lump together multiple tasks," it is "impossible to evaluate their reasonableness"); <u>Kaiser v. MEPC Am. Props., Inc.</u>, 518 N.E.2d 424, 429-30 (Ill. App. Ct. 1987).

    The fee dispute between Smith and Bretford also involves

another aspect of the <u>Hensley</u> case. The plaintiffs there had achieved only partial success, but the trial judge refused to eliminate the time spent on the unsuccessful claims when determining the fee award. The Supreme Court reversed and remanded for such a determination, stating that "the district court should award only that amount of fees that is reasonable in relation to the results obtained." 461 U.S. at 440. In connection with its holding that the fee applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," the Court quoted with approval the following language from a First Circuit case:

> As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.

<u>Id.</u> at 437 n.12 (citing <u>Nadeau v. Helgemoe</u>, 581 F.2d 275, 279 (1st Cir. 1978), <u>later abrogated on other grounds by</u> <u>Richardson v. Miller</u>, 279 F.3d 1 (1st Cir. 2002)).

Local Rule 54.3 was adopted for the purpose of requiring the first look at a fee request to be taken by the persons who are probably in the best position to assess its reasonableness — counsel representing the other side. The assumption is that the attorneys for the respondent will have done work roughly paralleling that performed on behalf of the fee applicant. The Rule thus requires the parties to exchange information about their

respective fees, to identify the basis of any objections to any hours claimed, see L.R. 54.3(d), and, if they are unable to agree on an appropriate award, to file a Joint Statement containing "a brief description of <u>each</u> <u>specific</u> <u>dispute</u> remaining between the parties as to the fees or expenses." L.R. 54.3(e)(3) (emphasis added). This court's experience is that, generally speaking, the Rule has worked very well and has saved district judges substantial amounts of time in ruling on fee disputes.

## The Areas of Disagreement

Smith claims fees and expenses incurred during three periods of time. The first period is from January 10, 1998 through June 2000, when we granted Smith summary judgment on the trade dress claim. <u>See</u> <u>Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.</u>, 116 F. Supp. 2d 951 (N.D. Ill. 2000). During this period Smith was represented by the firm of Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP ("Pattishall"). Pattishall's fees were $325,336 and costs were $20,570.21, for a total of $345,906.21 during this first time period. Bretford does not object to any of Pattishall's requested hourly rates, nor to the expenses, but it does object to the number of hours claimed. Bretford suggests that Pattishall's fees should be reduced to $103,316.25, which is what Bretford paid its own attorneys for the same time period.

The second time period for which Smith claims fees and expenses is from October 2003 to December 2004, which covers the

appeal to the Seventh Circuit and the later work involved in briefing the question of whether this is an "exceptional" case, making Smith eligible for an award of fees under § 1117(a) of the Lanham Act. Smith obtained new counsel to handle the appeal and fee question, McAndrews, Held & Malloy, Ltd. ("McAndrews"). Fees are also claimed for work done during this period by a separate attorney, Scott Hillstrom.

McAndrews charged Smith a total of $224,631.75 for its work on the appeal but seeks an award of only 50% of that amount, $112,315.88, on the basis of its estimate that 50% of McAndrews's time was spent on the trade dress issue. Smith is also seeking $948.48 in costs for the period, which is 50% of the $1,896.95 incurred. The same percentage reduction is made for Scott Hillstrom, for whom Smith seeks reimbursement of $6,656.25 in fees and $275.54 in expenses.

Bretford does not object to McAndrews's hourly rates or expenses but does disagree that 50% is an accurate estimate of the time McAndrews spent on the trade dress issue. Bretford believes it was closer to 33⅓. It believes the appropriate fee, therefore, would be $74,877.25.

As for Mr. Hillstrom, who apparently served as an intermediary between Smith and McAndrews, Bretford's position is that his services were unnecessary and that none of his fees should be taxed to Bretford.

The third period for which fees are sought is September 20, 2005 through December 2005, covering work in connection with the pending fee petition, following our decision to award Smith its reasonable fees in defending the trade dress claim. See Bretford Mfg., Inc. v. Smith Sys. Mfg. Co., 389 F. Supp. 2d 983 (N.D. Ill. 2005) ("Bretford II"). Smith seeks $63,467.50 in fees and $515.50 in related expenses. Bretford concedes the expenses but argues that the fees are excessive.

## DISCUSSION

Our analysis will examine the hours claimed for each of the time periods indicated above. (As already noted, Bretford does not object to the requested hourly rates or the expenses, and we will therefore not comment on them.)

### Pattishall's Fees for Defending the Trade Dress Claim

The time records submitted by Smith in support of Pattishall's $325,336 in fees consist of nothing more than copies of the invoices Pattishall submitted to Smith from February 10, 1998 through June 30, 2000. (Smith's Mem. in Support of its Petition for Attorneys' Fees and Costs, Ex. G.) Each of the invoices is in the block billing format, with a line for the date, followed by the initials of the attorney, then the total hours spent by the attorney on that date, then a serial listing of the work done by the attorney on that date and finally a dollar amount representing the total hours multiplied by that attorney's hourly rate. Each

invoice includes a "Summary of Professional Services," showing the names of the attorneys and their hourly rates.  All of the invoices are in the same format as the first one, dated February 10, 1998, which we reproduce by way of illustration:

---

Pattishall, McAuliffe, Newbury, Hillard & Geraldson

Smith System Manufacturing Company
P.O. Box 860415
Attn: Gary Shirley
Plano, TX 75086

Invoice # 117281
Billing Atty - BAA
February 10, 1998

Client Number - 689-000

For Professional Services Rendered
 Through January 31, 1998
 In Connection with the Following Matter -

 Bretford Mfg. v. Smith System      Matter Number 1

| 1/30/98 | BAA | 3.50 | REVIEW COMPLAINT, CLIENT BROCHURE AND PLAINTIFF'S CATALOG; PREPARATION OF OUTLINE OF ISSUES AND QUESTIONS; ATTENTION TO LEGAL ISSUES; TELEPHONE CONFERENCE WITH MR. RISDALL _____ TELEPHONE CONFERENCE WITH MR. LAZAR RE CORRECTION OF FACTS, POSSIBLE SETTLEMENT AND ISSUE OF PLAINTIFF'S STATEMENTS IN MARKETPLACE. | $ 700.00 |
|---|---|---|---|---|
| 1/30/98 | KER | 2.30 | REVIEWED COMPLAINT/CEASE AND DESIST LETTERS GATHERED BY CLIENT; TELEPHONE CONFERENCE WITH CLIENT RE FACTS OF CASE; PREPARATION OF ANSWER. | 345.00 |
| 1/30/98 | JLR | .70 | COMPUTER RESEARCH RE CORPORATION STATUTE. | 70.00 |
| 1/31/98 | KER | 1.40 | LEGAL RESEARCH RE AESTHETIC FUNCTIONALITY DEFENSES IN THE 7TH CIRCUIT. | 210.00 |
| | | 7.90 | TOTAL HOURS | |
| | | | | $ 1,325.00 |

SUMMARY OF PROFESSIONAL SERVICES

| ATTORNEY/PARALEGAL | HOURS | RATE | AMOUNT |
|---|---|---|---|
| B.A. AUGUST | 3.50 | 200.00 | 700.00 |
| K.E. ROSS | 3.70 | 150.00 | 555.00 |
| J.L. ROHAN | .70 | 100.00 | 70.00 |
| | 7.90 | | $1,325.00 |
| INVOICE TOTAL | | | $ 1,325.00 |

(Id., Ex. G).  The principal attorney on the case was Brett A. August, a partner in the Pattishall firm.  His hourly rate varied over the period in question from $200 in June of 1998 to $280 in October 1999 and thereafter through June of 2000.  The other attorneys who worked on the case were associates with the firm, and their hourly rates were significantly less than those of Mr. August.

Before we discuss Smith's objections to the Pattishall time records, we will express some reservations of our own.  It is one thing to submit invoices of this kind to a client, who will ordinarily take at face value the assertions made and pay the amount requested, trusting that it is reasonable.[1]  It is another thing, however, to submit copies of such invoices in support of a motion to compel payment by the adversary in litigation, who ordinarily would be expected to contest the reasonableness of the claim.  The invoices are equally insufficient to provide the court with a rational basis for any fee award it makes.  We have spent

---

[1] This is not always true, of course.  Sophisticated clients are aware of the need for more specific information in support of the hours claimed, and some now require "task-based billing" as opposed to block billing.

the time necessary to study each of the invoices in detail.  There
are a few instances where a specific amount of time is linked to
work described sufficiently to permit a determination that it was
probably a necessary task.  Aside from those instances, it is
impossible to learn from the invoices how much time was reasonably
spent by Pattishall attorneys on work that needed to be done in
defense of the trade dress claim.  This is because the tasks listed
in the invoices are usually described in general language that
conveys no information about the <u>specific</u> work that was done, nor
is there an indication of how much time was spent on any particular
task.

    We use the invoice of February 10, 1998 as an example of what
we mean.  On January 30, 1998, Mr. August charged 3 hours and 50
minutes for a series of tasks which included "preparation of
outline of issues and questions," "attention to legal issues," and
"telephone conference with Mr. Risdall [a principal of Smith]."  We
have no idea how much time was spent on each of these items and no
idea of what was actually done.  Without some idea of what "issues
and questions" were included in the "outline," we have no way of
assessing the value of the outline, and, without knowing how much
time was spent on it, we are unable to determine whether the time
spent was reasonable or excessive in relation to value of what was
produced.   "Attention to legal issues" is meaningless to us,
whatever it may have meant to Mr. August.  We realize that a lawyer

must confer with the client, but, without some indication of what the telephone conference with Mr. Risdall concerned, and how long it took, we have no way of determining whether the time spent was reasonable. Whether Mr. August's $700 charge for the 3.5 hours was reasonable or not can only be a matter of speculation.

K.E. Ross charged for 2 hours and 30 minutes on January 30. The tasks included "telephone conference with client re facts of case," which may or may have not duplicated the telephone conference held by Mr. August on the same date. It would help to know how long each conference lasted and to have an indication of the subjects discussed in each of them. It would also be important to know how much of the 2 hours and 30 minutes was spent by K.E. Ross on "preparation of answer." This is because the invoice of March 24, 1998 also included time for preparation of the answer, and we need to know the total time spent on that task in order to determine whether it was reasonable.

The next entry on the February 10 invoice is an improvement, in that it attributes a specific amount of time spent by J.L. Rohan to a specific item, .7 of an hour for "computer research re corporation statute." We are unable to judge the reasonableness of the time because we do not know what "corporation statute" was being researched. However, the entry is specific enough for Bretford to have challenged it in the manner contemplated by Rule 54.3. If the statute was irrelevant, or the research time

excessive, Bretford should have been able to point that out.  It did not do so.

The final entry on the February 10 invoice is for January 31, 1998 by K.E. Ross.  It has the virtue of attributing a specific amount of time, 1 hour and 40 minutes, to one specific task: "legal research re aesthetic functionality defenses in the 7th Circuit." As with J.L. Rohan's research on the "corporation statute," the specificity of this entry was sufficient to enable Bretford to contest the time spent on the functionality research.  Bretford did not specifically object to this entry.

Of the 7.90 hours included in the February 10, 1998 invoice, then, only 2.1 hours, the entries showing the time for specific research, are sufficiently documented to be eligible for possible reimbursement.

We could express a similar analysis of each of the other Pattishall invoices.  The February 10, 1998 invoice is, if anything, more informative than most of the others.

The error that Smith has made is to assume that copies of invoices submitted to a client are an adequate documentation of a fee petition presented to a court.  Only rarely would this be true, because invoices to a client seldom contain the degree of specificity concerning the work done, and the time spent, that a court will require (and a client will generally _not_ require) in order to determine the reasonableness of the fees requested.  It is

no answer to say that the specific information we find lacking in these invoices was not _needed_ by Pattishall because the client would not have demanded it. Fee shifting is a fact of modern federal litigation, and lawyers know from the outset of a case whether a fee petition is a possibility. It is therefore necessary, at least in that kind of case, for the lawyer to keep contemporaneous time records that will permit the presentation of an adequate petition. As the Supreme Court said in _Hensley_, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked ... and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." 461 U.S. at 437. The Seventh Circuit has expressed the same view. See _Vocca v. Playboy Hotel of Chicago, Inc._, 686 F.2d 605, 608 (7th Cir. 1982) ("District Courts, entrusted with the task of ordering an unsuccessful litigant to pay the reasonable attorney's fees of his opponent, may properly demand that a claim for such fees be fully supported by accurate and detailed records. When it is not, the request may be denied.")

\*     \*     \*     \*     \*

We turn now to the arguments of the parties.

**A.**

**<u>The Pattishall Fees</u>**

Bretford argues that the excessiveness of Pattishall's fees is demonstrated by the fact that Bretford's attorneys, Seyfarth Shaw LLP ("Seyfarth"), charged Bretford only one-third as much to do basically the same work.  Smith responds that Bretford's fees are irrelevant because the importance of winning the trade dress case was much greater for Smith than it was for Bretford.  Had Bretford won, Smith would have been enjoined from selling its "Y-leg" tables and could have been liable to Bretford for substantial damages. (Smith's Reply at 3-5.)

To support its argument that Seyfarth did essentially the same work as Pattishall, Bretford submits the Seyfarth invoices to Bretford for the same period.  (Bretford's Reply, Ex. A.)  But this bulky sheaf of invoices proves nothing about the comparability of the work done by Seyfarth.  First of all, the copies of most of the invoices have apparently been redacted to eliminate any descriptions of the work performed.  Hours and hourly rates are listed, but there is usually no description of any work to which they relate.  The few work descriptions that do appear are in the block billing format, so that, just as in the case of the Pattishall invoices, it is impossible to tell how much time was spent on what task.

We agree with Bretford on the general proposition that

Seyfarth's fees would be relevant if we knew that they related to the same tasks Pattishall performed, but Bretford has failed to demonstrate that. All we know is that, during the same time period, Seyfarth did much less work and charged only one-third as much as Pattishall. This does not lead to the conclusion that Pattishall did unnecessary work or spent too much time on work that might have been necessary. It could simply mean that Pattishall was more thorough.

Bretford's next argument is that the excessiveness of Pattishall's fees is indicated by the fact that Seyfarth and the McAndrews firm (Smith's new attorneys) spent about the same amount of time and charged about the same fees for handling opposite sides of the appeal in the case. Bretford concludes from this that, had McAndrews handled the trade dress issue in this court, its fees would have been about the same as Seyfarth's.

In its reply, Smith devotes one short paragraph to this argument, stating that "Bretford cites no authority for this non-sequiter [sic] proposition – presumably because there is none." (Smith's Reply at 5.) We do not agree that the argument is a non sequitur and think it probably does point up a difference in the billing practices of the Pattishall and McAndrews firms. We think the comparability of the fees charged by the Seyfarth and McAndrews firms for admittedly comparable work is a fact relevant to the likelihood that the Pattishall charges were excessive. It is not

surprising that Bretford cites no case in point, since the fact situation here – a midstream substitution of attorneys for the fee applicant — is unusual.

Bretford makes no argument based on the inadequacy of Pattishall's time records (perhaps because Seyfarth's time records are no better), and instead suggests three specific reasons why Pattishall's fees became excessive. First, Brett August, the only partner on the case, simply did more work than was necessary. He alone billed for 868.90 hours, which is 323.4 hours more than the total of 545.50 hours charged by all the Seyfarth lawyers and paralegals for their work in this court on the trade dress issue. (Declaration of Bart A. Lazar, included in Exs. to Bretford's Response, ¶ 8.) Secondly, Bretford argues that many of the tasks handled by Mr. August, at his partner's rate, should have been delegated to associates who could have performed them much less expensively. Thirdly, Bretford contends that the Pattishall associates, like Mr. August, spent more time than was reasonably necessary.

This may all be true, but the evidence offered by Bretford is insufficient to show that it is. Bretford offers the time totals for the Seyfarth partners, associates and paralegals, but, in the absence of proof of how much time any of them spent on any particular task, the totals are not helpful. As we have seen with Bretford's attempt to compare Pattishall's total charges with

Seyfarth's total charges, we are unable to conclude that one firm spent substantially more time than the other on similar tasks.

Smith places much emphasis on the fact that Pattishall's charges were fully paid by Smith. We agree that payment is a relevant circumstance. But it is certainly not dispositive. The premise is that the client would not pay the fee, at least in full, if it thought the charges unreasonable. Payment, therefore, is proof of client satisfaction, and that, in turn, is proof of reasonableness. The argument holds up only if the client has sufficient sophistication to be able to know the charges are reasonable. We have no information as to Smith's ability to determine from the invoices of Pattishall that the charges were reasonable. We have found ourselves unequal to that task, and we doubt that Smith had any insight that we lack.

Bills are sometimes paid not because the debtor believes the charge is reasonable but because it is less trouble and expense to pay than to resist. This is particularly true when the debtor feels unable to prove that the bill is excessive. Another factor is introduced when the creditor is a law firm, and, unlike the ordinary creditor, can litigate its claim at a relatively modest cost. We do not know Smith's state of mind when it paid Pattishall's invoices, but we do know that after Pattishall obtained a summary judgment for Smith in this court, Smith retained the McAndrews firm to defend the appeal. McAndrews handled the

appeal for a fraction of what Pattishall had charged in this court. We have been given no explanation as to why the substitution of attorneys occurred, but, putting all of the circumstances together it is difficult to resist the inference that, however pleased Smith may have been with the result obtained by Pattishall, it thought the price was too high.

We recognize, of course, that there could have been other explanations, and we are therefore not in a position to make a definite finding that Smith was dissatisfied with Pattishall's charges. But neither would it be reasonable for us to find, simply on the basis that Smith paid the charges, that Smith thought the bills were reasonable. Still less is it a basis for us to find that the bills were in fact reasonable when our own analysis of them fails to support that conclusion.

Smith's main argument is that Bretford has waived its objections to Pattishall's fees by failing to comply with the requirement of Local Rule 54.3 that objections be made to specific charges. Smith complains that "Bretford has presented only general objections to Pattishall's hours – leaving Smith and this Court with no reasonable way to address any specific Bretford objections." (Smith's Mem. at 7.)

What Smith overlooks is that, for the reasons we have taken some pains to explain, the Pattishall time charges are not, for the most part, amenable to the kind of treatment contemplated by Rule

54.3. The invoices contained very few specific time charges, and Bretford could not have addressed more than a small percentage of the total entries in the manner provided in Rule 54.3 even if it had tried.

What Bretford should have done was to have pointed out how deficient the Pattishall invoices are as an indication of the number of hours reasonably required to perform specific tasks. Bretford failed to do that, but the court has an independent obligation to determine the reasonableness of the fees requested, whether or not Bretford makes the right arguments. Bretford has not waived anything as a result of its inability to comply with the specificity requirement of Rule 54.3.

*    *    *    *

We must come to some conclusion about the Pattishall fees. Because they are not adequately documented, it might be appropriate to deny reimbursement altogether. See Vocca, 686 F.2d at 608. But we are disinclined to do that, for several reasons. First, it is important to remember our holding that "Bretford's complete lack of any evidence of likelihood of confusion makes this an exceptional case in our view, and we will award reasonable fees for the work Smith was required to do in defense of the trade dress claim." Bretford II, 389 F. Supp. 2d at 986. It would be unfair to Smith to deny it all reimbursement for Pattishall's fees simply because of Pattishall's failure to keep adequate records. Moreover, there

is no doubt that Pattishall performed valuable services. Its failure to document what they were, and how much time they should have required, should be considered in light of the fact that Pattishall did present a successful defense to the trade dress claim. To deny Smith any compensation at all for the work done by Pattishall would ignore this simple reality. It would also provide an undeserved windfall to Bretford. Finally, if we were to deny all reimbursement, it would virtually assure further appellate activity in this eight-year-old case. Having in mind the admonition of the Supreme Court in <u>Hensley</u> that "[a] request for attorney's fees should not result in a second major litigation," 461 U.S. at 437, we would like to find a practical and equitable solution that might put this issue to rest. We believe that Bretford has suggested such a solution when it proposed that the Pattishall fees be reduced to $103,316.25, the amount Bretford paid Seyfarth to handle the trade dress claim in this court. Whether this is less than the reasonable value of Pattishall's services is something we have no way of knowing, but neither can we see a basis for a higher award.[2] Accordingly, we will award Smith the sum of $103,316.25 as reimbursement for the fees it incurred in defending the trade dress claim in this court.

---

[2] This amount is much greater than what would be necessary to compensate Smith for the Pattishall time reflected in the relatively few entries that are task-specific.

## B.

## <u>The Appeal</u>

The appeal involved the trade dress issue and, in addition, the reverse passing off issue.  We have awarded fees for only the trade dress issue, so the problem is how to determine how the total time spent by the McAndrews firm was divided between the two issues.  Significantly, Smith makes no effort to show by reference to time records how much time was spent on each of the two issues. Copies of McAndrews's invoices are included as exhibits to the fee petition, but there is no claim that they show the necessary breakdown of the time.  Instead, Smith submits as an exhibit a copy of the appellate brief written by McAndrews and argues that because something over 50% of the pages are devoted to the trade dress issue, the appropriate award would be 50% of what McAndrews charged for the appeal.  Smith also argues that trade dress was the more important of the two issues.

For its part, Bretford argues that "the reverse passing off case dominated the briefing and oral argument of the appeal," (Bretford's Response at 1), and that "Smith's brief devoted 22 pages (pp. 29-50) to the passing off claim and related damages issues, while only 10 pages (pp. 19-29) related to the trade dress claim."  (<u>Id.</u> at 7.)

The parties differ in their methods of computing the number of pages devoted to each issue (for instance, how to divide the

introductory portions of the brief, including the Statement of Facts), but we regard the number of pages as relatively unimportant. The task of the court is to award fees based upon the number of <u>hours</u>, multiplied by the hourly rates. Both sides assume that pages are the equivalent of hours, but there is no rational basis for such an assumption. Many hours might be devoted to the research supporting two or three pages of a brief, whereas much less time could be involved in producing ten or fifteen pages of the brief. The page-count approach, in our view, has nothing to commend it. What we need are <u>time</u> <u>records</u> to support the claim, and they must show the number of hours specifically allocable to the issue on which fees are being awarded. Recall the language of the First Circuit that was quoted with approval by the Supreme Court in <u>Hensley</u>:

> As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit which plaintiffs were only partially successful <u>if counsel's records do not provide a proper basis for determining how much time was spent on particular claims</u>.

461 U.S. at 437 n.12 (emphasis added).

Bretford argues that, rather than 50%, Smith should be awarded fees for 33⅓% of the time McAndrews spent on the appeal. For the same reasons we adopted Bretford's proposal in regard to Pattishall's fees, we adopt its proposal in regard to the appeal. Smith will be allowed the sum of $74,877.25 as reimbursement for one-third of McAndrews's fees for the appeal.

## C.

### The Fees and Expenses of Scott Hillstrom

Mr. Hillstrom is associated with the Guardian Law Group, LLC, in Minneapolis, Minnesota. Smith has submitted copies of his invoices (Fee Petition, Ex. F), and they indicate that he participated in some of the briefing in this court and conferred from time to time with attorneys at the McAndrews firm and principals at Smith. We are unable to tell the exact role he played in the case, and, considering the large number of attorneys at the McAndrews firm who billed time, it would take more than the sketchy information in the invoices to persuade us that Mr. Hillstrom's time charges were not duplicative of charges made by McAndrews. No such evidence is presented by Smith, which argues simply that "Smith has put together a legal team to adequately represent it against Bretford's trade dress and reverse passing off claims, and the Court should allow the fees and expenses of Scott Hillstrom." (Smith's Reply at 10.) We find that Smith has failed to document the value of Mr. Hillstrom's services, and we therefore disallow the $6,656.25 in fees and $275.54 in costs for which Smith seeks reimbursement.

### D.

### The Fee Application

Smith requests $63,467.50 in fees and $515.50 in costs as reimbursement for McAndrews's charges in litigating this fee

application. Bretford argues that it would be inappropriate to allow this claim for "fees on fees," but we agree with Smith that an allowance of reasonable fees for presenting a successful fee petition is the only way a fee applicant can be made whole. If it must absorb the cost of proving the appropriate amount, it will be sacrificing part of the award.

Bretford objects to the $63,000 claim on the basis that in its original memorandum Smith estimated that its fees for litigating the fee petition would be approximately $25,000. Bretford accuses Smith of misleading the court, but we think what happened is that Smith simply overlooked some of the time it had already spent when it made the estimate. We see no evidence of an intent to deceive, nor is there any prejudice to Bretford from the fact that the estimate was too low. The issue is the reasonable amount of fees to be awarded, and Bretford has fully stated its position regarding the merits of the $63,000 claim. Bretford has reviewed the McAndrews and Pattishall invoices to Smith for the work involved in the fee application and has not expressed any concern about vagueness or anything else that would prevent it from making specific objections to particular time entries.[3] Bretford does specifically object to a total of 59 hours of what it regards as "clerical work" that was billed by McAndrews at an attorney's rate

---

[3] In fact, the entries in the invoices are relatively specific in allocating hours to particular tasks. This appears to be due to the fact that the types of work required by the fee application are limited in scope and obvious to both sides.

of $220 per hour. This work is listed on Exhibit 2 to Bretford's Surreply. We agree with Bretford as to a total of 13.75 hours (the entries of 9/26/05, 9/27/05, 10/10/05 and 10/11/05), which are for work that appears to be clerical. The remainder of the hours seem appropriate for the $220 attorney rate. We will reduce Smith's claim by $3,025.00 (13.75 x $220). Arguably, a paralegal rate should be allowed for these hours, but this kind of precision would be artificial in view of a further problem we have with Smith's request. Much of the time logged by McAndrews on the fee application was devoted to an attempt to persuade us that Smith was entitled to 100% reimbursement for Pattishall's fees and 50% reimbursement for the fees of McAndrews and Scott Hillstrom. Smith was only partially successful. There is no rule that a fee applicant must receive 100% of its fees incurred in presenting an application that is only partially successful. Rather, just as the fees themselves are apportioned as between successful and unsuccessful claims, the fees for presenting a partially successful fee application should be similarly apportioned. The total fees claimed by Smith for litigation of the trade dress claim and the petition for an award of fees under the Lanham Act was $444,307. We have awarded $179,207.95, which is 40% of the amount requested. The amount requested by Smith for the fee application, $63,467.50 reduced by the $3,025 for clerical work, comes to a net of $60,442.50. Clearly, some reduction to account for the futility of

some of the time spent is in order. It would not be possible to distill from McAndrews's total hours those that were spent pursuing an award higher than the one we have made. The time does not break down that way. Even if it did, there are no records showing what the breakdown would have been. Therefore, an allowance of, say, 40% of the $60,442.50, to match the percentage of claimed fees we allowed for the litigation itself, would probably not include all of the time spent on the fee application that would have been necessary regardless of the percentage of the application ultimately allowed. No exact figure is attainable, but we think an allowance of 60% of $60,442.50, or $36,265.50, would be fair. That will be the award for the fees incurred in presenting the fee application.

## CONCLUSION

Pursuant to § 1117(a) of the Lanham Act, the defendant, Smith System Manufacturing Company, will be awarded the following fees and costs, to be paid by the plaintiff, Bretford Manufacturing Inc.:

## ATTORNEYS' FEES

Incurred Prior to Fee Application:

| | |
|---|---|
| Pattishall Firm | $ 103,316.25 |
| McAndrews Firm | 74,877.25 |

Incurred In Fee Application:     36,265.50

$ 214,459.00

## COSTS

Incurred Prior to Fee Application:

|  |  |
|---|---|
| Pattishall Firm | 20,570.21 |
| McAndrews Firm | 948.48 |

Incurred In Fee Application:     515.50

            $ 22,034.19

**TOTAL OF FEES AND COSTS**   **$ 236,493.19**

Date:   March 10, 2006

ENTER:  _____
    John F. Grady, United States District Judge